The Central Railroad Company of New Jersey et al.

v.

The Standard Oil Company et al.

After complainants had constructed their railroad tracks through a city, part of the lands which its tracks traversed was condemned by the city, in order to cross them with a street. This necessitated a bridge, which was sixteen feet above the tracks. The bridge, although built by the company, was paid for by the city. Subsequently, the defendants, by virtue of a resolution passed by the city authorities, laid a pipe for transporting oil along and underneath the surface of the street, and crossed complainants' tracks at and on a level with, and alongside of, the bridge. A preliminary injunction to prevent such crossing, applied for by the railroad company and its receiver appointed by this court, was refused, because,

(1) The pipe had been laid before the application for the injunction was made.

(2) To justify its allowance, there is shown no irreparable injury, either from leakage of the oil to be transported, which is highly inflammable, or interference with the elevation of the bridge, if complainants desire to raise it.

(3) The complainants have no monopoly in carrying oil, and hence cannot object to lawful competition.

(4) No contempt towards this court appears by defendants' action.

Bill for relief. On bill and answer and affidavits. Order to show cause why injunction should not issue.

*Mr. B. Williamson* and *Mr. B. Gummere*, for complainants.

*Mr. R. Gilchrist* and *Mr. A. P. Whitehead*, of New York, for defendants.

The Chancellor.

The Central Railroad Company of New Jersey became the owner, by purchase, of a tract of land, which it bought for the purposes of its road and business, and over which its tracks were laid through the city of Bayonne. When it bought the land, it took title in fee. Streets had been, by due authority, laid out over it by mapping. It built its road over it, and at the place

where Thirtieth street, as laid on the map, crossed it. The road was constructed in a cut. The city subsequently took, by condemnation, part of the land of the railroad company for that street. A bridge was necessary at the crossing over the railroad, which at that place was about sixteen feet below the grade of the street. The railroad company built the bridge, but was allowed for the cost of it in the assessment upon it, for the benefits of the street to its land not taken. By its charter it was bound, as is now claimed in its behalf, to build the bridge. After the bridge was built, the Standard Oil Company, a foreign corporation, obtained permission (granted by resolution) from the city to lay pipes in the street. The pipes were to be part of a line which it proposed to lay for a conduit for oil from the Erie railroad at Snake Hill, in Jersey City, to the oil company's works at Constable's Hook, in Bayonne. It neither obtained nor asked for any permission, either of the railroad company or of the receiver thereof appointed by this court on proceedings in insolvency, who was in possession of and operating the road, under the order of this court; and it had no authority from the legislature in the premises; but claiming, or acting on the assumption, that the bridge was part of the street, and neither having nor professing to have any authority except that derived from the municipal authorities of Bayonne, it laid pipes (six inches in diameter) at and alongside of the bridge, but, as it insists, not supporting them thereon or thereby, and when the bill was filed, it maintained, or was in the attitude of maintaining, the pipes there by forcible resistance against the receiver of the railroad company. The complainants, the railroad company and the receiver, invoke the protection of this court against this action of the oil company in laying and maintaining the pipes, and, to that end, ask for a preliminary injunction. They base their claim to this relief on the ground of irreparable injury, insisting that the oil company had no lawful authority to lay the pipes, because, as they urge, in the first place, the city could give it no right to do so, and, in the next place, if the city had the power, it could not give the authority by resolution, but must do so by ordinance; and, further, that the oil company is unlawfully, and by mere usurpa-

tion, imposing upon the bridge, which the railroad company claims to own, or the place where the pipe is laid, a servitude at once unauthorized, inconvenient and dangerous, and an unwarrantable invasion and usurpation of the rights and property of the railroad company, and that, too, for the purpose of enabling the oil company to compete with the railroad company in the exercise and enjoyment of its franchise in the transportation of oil for tolls over its road, or, at least, to deprive it of tolls which it would otherwise get (and to which it has a right) by such transportation. It is also urged that the action of the defendants in digging through the abutments of the bridge and laying the pipes without permission of this court (in whose hands, as before mentioned, the railroad company's property and affairs were and are), was a contempt of court, and ought to be characterized and dealt with accordingly.

The oil company, on the other hand, insists that the municipal government had authority to empower it to lay the pipe in the street, and it contends that the bridge is part of the street; and in this connection, it further claims that the city, under its charter, by the condemnation proceedings, acquired the fee of the land taken from the railroad company for the street, and not merely a right to use it for the purposes of a highway.

The railroad company was, by its charter, when it built the bridge, bound to "construct and keep in repair good and sufficient bridges or passages over or under its railroads where any public or other road should cross them, so that the passage of carriages, horses and cattle should not be impeded thereby" (*P. L. of 1847 p. 133 § 9*); and the complainants insist that the bridge was built by the railroad company under its statutory obligation to construct and maintain it. But it appears that, though built by it, it was, in fact, paid for by the city, and the defendants claim that therefore it is to be regarded as the property of the city, and, as such, subject to its use as part of the street, for reasonable, lawful municipal servitudes and uses. They also claim that the city, by the condemnation, obtained a right to use the air space above the railroad for such purposes.

The city, by its proceedings for opening the street, condemned

9

land crossing the railroad to the full width of the street. The street appears to be of the width of eighty feet, of which forty-eight are devoted to travel by vehicles and the rest to use as sidewalks. The bridge is of the width of fifty feet. If the city is to be held to have acquired by the condemnation only the right to a convenient crossing for travel, obviously it must be held to have acquired nothing more than the railroad company was, by its charter, bound to furnish.

The defendants, as before stated, insist that, by the condemnation, the city acquired a fee in the land condemned. By the original charter, which was granted in 1869 (*P. L. of 1869 p. 398*), it was provided that on condemnation the land should vest in the city, and by the supplement (approved March 28th, 1873) to the act revising the charter (*P. L. of 1873 p. 469*), it was enacted that, on condemnation, the fee simple should be vested in it; and the defendants claim that, notwithstanding the proceedings for condemnation were begun before the passage of the latter act, yet it, by relation back, gave the city a fee in the land condemned. But apart from the obvious question raised by the mere statement of this claim, it is to be remarked that the claim to a fee in the land in question is in direct contrariety to the adjudication of the supreme court in *N. J. Southern R. R. Co.* v. *Long Branch Comm'rs, 10 Vr. 28*, in which it was held that a municipal corporation under a condemnation for a street across a railroad track, acquires only a right of way; and, according to the doctrine of that case, the contrariety would still exist, though it be conceded that the provision of the supplement of 1873, before referred to, though posterior in date to the beginning of the proceedings therein, applies to the condemnation under consideration.

Whether the city has the right to use the space above the railroad for any other purpose than travel by means of the bridge, is a question in dispute between the parties.

It is urged by the complainants, however, that the supreme court has decided that a municipality cannot impose on the land taken for its streets any uses or servitudes except those sanctioned by law or custom, and that therefore it is established that the

Central R. R. Co. v. Standard Oil Co.

leave given to the oil company in this case, even though it had been by ordinance, instead of resolution, was unauthorized.

But a still further question is raised: The revised charter of the city (*P. L. of 1872 p. 686*) confers power (*p. 704*) on the municipal authorities to regulate the manufacture and keeping of gunpowder, petroleum, fireworks and all other dangerous and combustible articles, and the defendants insist that, under this power, the city has a right, with a view to public protection, to authorize the transportation of petroleum through the city by means of underground pipes, and, to that end, to give the use of the streets, or parts of them, for the purpose. It is enough for the present purpose to say that a question of construction is thus presented. The complainants' asserted right, on which the claim to relief by injunction is founded, is in dispute.

But if the city has neither any right, nor even any shadow of right, under its charter, to authorize the laying of the pipes, then the action of the defendants is unwarranted, and is a trespass, and equity will not interfere by preliminary injunction, in case of trespass, except where irreparable injury is threatened. It is established in this state that a preliminary injunction will never be ordered unless from the pressure of an urgent necessity, and to prevent what, in equity, is regarded as irreparable damage. *Citizens Coach Co.* v. *Camden Horse R. R. Co.*, *2 Stew. Eq. 299.* In that case the following language of Chancellor Williamson, the elder, is quoted with approval:

"An injunction ought not to be allowed in all cases of trespass, nor to protect persons in the enjoyment of every right. The court always, to restrain a trespasser, expects a strong case of destruction or irreparable mischief to be made out, or that the trespass should have so long continued as to become a nuisance. A perseverance in committing acts of trespass is not sufficient."

In the case of *Citizens Coach Co.* v. *Camden Horse R. R. Co.*, the preliminary injunction complained of, the order for which was reversed, was issued to restrain the coach company from using the complainant's railroad tracks, in competition with it in the business of carrying passengers, in the exercise of its

franchise. Such injury was held by the appellate tribunal not to be of a character to warrant interim interference.

This case presents no condition of circumstances demanding, by reason of the threatened infliction of irreparable injury, the intervention of this court at this stage. The pipes had been laid when the bill was filed. The allegation of danger from fire, in view of the leakage of oil from the pipes, and the highly inflammable nature of the substance, is met by proof that there is no danger, and the offer to make all such appliances to protect the complainants against the possibility of injury from leakage of the pipes as this court may direct.

It is suggested by the complainants that the existence of the pipes will be an obstruction and impediment to raising the bridge (which, it is said, is contemplated, and which they allege is necessary for the protection of the lives of brakemen on their freight cars), and perhaps prevent it entirely. But in that view, suffering the pipes to remain where they have been put, and permitting them to be used, cannot be regarded as an irreparable injury, for this court can provide for that contingency, if need be, when occasion requires.

The oil company insists that the pipes are not supported by the bridge, and that if the bridge were removed they would still stand in place. Whether they in anywise depend on the bridge for support, is at most a subject of dispute.

But it is urged that the object of the laying of the pipes is to deprive the complainants of part of their business, and so to diminish the value of their franchise to transport goods for tolls, inasmuch as the oil company intends, by means of the pipes, to transport oil for itself, and may intend also to transport it by this means for others.

The complainants have no claim to a preliminary injunction on this ground. In the first place, the case just cited (*Citizens Coach Co.* v. *Camden Horse R. R. Co.*) would seem to be conclusive authority on this point. And, in the next place, they have no monopoly of transporting goods or passengers for tolls by all means whatever, and, of course, they have no claim to protection against lawful competition.

It will not be out of place to remark, though my conclusion in no wise rests upon it, that the oil company denies that it intends to transport goods for others by means of the pipe, but alleges that it intends to transport only its own goods thereby, and that, most manifestly, cannot be construed into an invasion of any franchise of the complainants.

As to the imputed contempt, the defendants do not appear to have been actuated by any disposition to contemn or disregard the power or dignity of this court.

On the ground, then, that there is no necessity or ground for interim interference, and without passing upon the disputed questions, except as to the right of the complainants to monopoly of transportation by all ways or means, I am of opinion that the order to show cause should be discharged, but, under the circumstances, it will be without costs.